IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CT-3229-FL

| | | |
|---|---|---|
| FREDERICK LYNN ATWATER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL G. BUTLER, JR., WILLIS J. | ) | ORDER |
| FOWLER, JAMES L. FORTE, DANNY G. | ) | |
| MOODY, KAREN L. GREGORY, FRANK | ) | |
| L. PERRY, GEORGE T. SOLOMAN, W. | ) | |
| DAVID GUICE, and BRETT | ) | |
| BARTHOLOMEW, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion for summary judgment (DE 62), filed pursuant to pursuant to Federal Rule of Civil Procedure 56. The motion has been fully briefed and thus the issues raised are ripe for decision. For the reasons stated below, the motion is granted and plaintiff's claims are dismissed.

## STATEMENT OF THE CASE

On September 1, 2015, plaintiff, a state inmate proceeding pro se, filed the instant civil rights action pursuant to 42 U.S.C. § 1983, alleging defendants violated his constitutional rights by changing his parole reviews from annually to biannually. On March 29, 2016, the court directed plaintiff to file an amended complaint that clearly set forth his specific legal claims and factual allegations. On April 8, 2016, plaintiff filed his amended complaint. The court thereafter conducted a frivolity review pursuant to 28 U.S.C. § 1915(e) and allowed the matter to proceed.

Plaintiff then filed multiple discovery requests, including requests for production of

documents and requests for admission.  On February 16, 2017, plaintiff filed motion to compel responses to his discovery requests.  On March 30, 2017, the court denied plaintiff's motion to compel as premature, and entered case management order governing discovery and dispositive motions practice.  On May 22, 2017, plaintiff filed second motion to compel, which the court subsequently denied on the merits.  Plaintiff also has filed numerous motions to appoint counsel and other miscellaneous motions during the course of the litigation, all of which the court denied. Plaintiff did not, however, request any extensions of the discovery period.

Following close of discovery, defendants filed the instant motion for summary judgment, arguing that the changes to the frequency of plaintiff's parole review did not violate plaintiff's constitutional rights.  In support of the motion, defendants filed statement of material facts and appendix.  Defendants' appendix included affidavits of Mary Stevens, Brett Bartholomew, and Karen Gregory, copies of relevant North Carolina Session Laws, plaintiff's parole records, and judgment and commitment orders entered in plaintiff's criminal cases.  On November 5, 2017, plaintiff filed response in opposition to the instant motion for summary judgment.  In support, plaintiff filed personal declaration, two statements of disputed material facts, and appendix. Plaintiff's appendix included defendants' responses to plaintiff's discovery requests, correspondence between plaintiff and parole/other prison officials, correspondence between plaintiff and North Carolina Prisoner Legal Services, Inc., plaintiff's parole eligibility determinations and other parole records, copies of North Carolina Session Laws, and the affidavit of Mary Stevens.

## STATEMENT OF THE FACTS

As defendants have moved for summary judgment, the court recounts the facts in the light most favorable to plaintiff.  Before plaintiff's most recent conviction and sentence, plaintiff had been

convicted of: 1) common law robbery, on June 5, 1986; 2) larceny and breaking or entering, on September 30, 1988; and 3) driving while licensed revoked, on October 22, 1990. (Stevens Aff. (DE 65-1) ¶¶ 3-8). Following each conviction, plaintiff was sentenced to an active term of imprisonment, and was thereafter placed on parole. (Id.) Plaintiff thus committed a new criminal offense within two years of each parole release. (Id. ¶¶ 3-9).

On November 8, 1990, the Parole Commission granted plaintiff parole release following service of 12 months imprisonment for driving while license revoked. (Id. ¶ 8). On March 4, 1991 (within four months of release), plaintiff was convicted of one count of first-degree rape and one count of first-degree sexual offense, and was sentenced to life imprisonment. (Id. ¶ 9). Plaintiff became parole eligible on November 19, 2010. (Id. ¶ 10). Plaintiff was first reviewed for parole release on September 19, 2010, and was reviewed annually thereafter until September 19, 2016. (Id. ¶ 11). The Parole Commission denied parole release after each review and provided plaintiff correspondence explaining why parole was denied. (Parole Denial Letters (DE 65-9)).

In 2015, the North Carolina General Assembly changed the frequency of parole reviews for prisoners convicted of sexually violent offenses. See 2015 N.C. Sess. Laws 228, § 1 (DE 65-14), amending N.C. Gen. Stat. § 15A-1371(b). As a result, the frequency of plaintiff's parole reviews changed from annually to biannually. (Stevens Aff. (DE 65-1) ¶ 11). Plaintiff's next scheduled parole review was set for September 19, 2018. (Id.)

## DISCUSSION

A.      Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v.

Liberty Lobby, 477 U.S. 242, 247 (1986).  The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading" but "must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248-49; see also Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmoving party thus "bears the burden of showing, by means of affidavits or other verified evidence, that [a] genuine dispute of material fact exists."  Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003).  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Anderson, 477 U.S. at 250.

B.      Analysis

Plaintiff's complaint and subsequent filings are not a model of clarity.  The court construes plaintiff's allegations as raising the following claims: 1) N.C. Gen. Stat. § 15A-1371(b)(5), which changed the frequency of plaintiff's parole reviews from annually to biannually, is an unconstitutional ex post facto law and violates the Fourteenth Amendment's Due Process Clause; 2) plaintiff is entitled to more frequent parole reviews under N.C. Gen. Stat. § 143B-72.1, a statute requiring that certain prisoners sentenced under the Fair Sentencing Act receive parole consideration, and defendants' failure to provide such review violates the Due Process Clause; and 3) certain prisoners convicted of the same crimes as plaintiff have been granted parole, in violation of plaintiff's rights under the Fourteenth Amendment's Equal Protection Clause.  Plaintiff also appears to argue that the increased interval between parole reviews and defendants' failure to grant

him parole constitute a violation of the Eighth Amendment's proscriptions on cruel and unusual punishment. The court addresses each claim below.

1.    Ex Post Facto and Due Process Claims

As noted, plaintiff became eligible for parole on November 19, 2010, but the Parole Commission denied parole release at plaintiff's first eligibility review. (Stevens Aff. (DE 65-1) ¶¶ 10-11). Between 2011 and 2016, plaintiff received annual parole reviews. (Id. ¶ 11); see N.C. Gen. Stat. § 15A-1371(b)(2) (providing that for most parole-eligible prisoners, parole reviews are conducted annually). In 2015, the N.C. General Assembly amended N.C. Gen. Stat § 15A-1371(b) to provide that persons convicted of sexually violent offenses receive biannual parole reviews. See 2015 N.C. Sess. Laws 228, § 1 (DE 65-14), amending N.C. Gen. Stat. § 15A-1371(b). The amendment provides as follows:

> The [Parole] Commission shall review cases where the prisoner was convicted of a sexually violent offense as defined in G.S. 14-208.6(5), and in its discretion, give consideration of parole and written notice of its decision once every second year; except that the [Parole] Commission may give more frequent parole consideration if it finds that exigent circumstances or the interests of justice demand it.

Id.

Plaintiff appears to allege that this provision violates the Ex Post Facto Clause of the United States Constitution. U.S. Const., Art. I, § 10 cl. 1. The Ex Post Facto Clause prohibits legislative enactments that, "by retroactive operation, increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249 (2000). Legislative enactments that amend the laws governing parole eligibility and review and that apply to prisoners convicted prior to enactment, may in certain limited circumstances violate the Ex Post Facto Clause. Id. at 250; Lynce v. Mathis, 519 U.S. 433, 445-46 (1997). In cases where new legislation extends the time period

between parole reviews, the law violates the Ex Post Facto Clause if it creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." Garner, 528 U.S. at 250; California Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995).

In Morales, the Supreme Court held a statute that permitted the parole board to increase the interval between parole reviews did not create a risk of retroactively-increased punishment, in part because the law did not change the statutory punishment imposed for the particular offenses, alter the standards for determining either the initial date for parole eligibility or suitability for parole, and also did not change the "basic structure" of the state's parole law. Morales, 514 U.S. at 507, 510-13. Garner also involved an ex post facto challenge to a state law granting the parole board discretion to increase the interval between parole reviews, and the Court ultimately concluded the record failed to establish the law created a sufficient risk of increased punishment. Garner, 529 U.S. at 246, 253-56. In both Garner and Morales, the Court emphasized that the laws permitted the parole board to conduct earlier parole reviews based on a change in circumstances and vested broad discretion in the parole board to grant expedited hearings, thus negating the argument that the statute categorically increased punishment by increasing the interval between parole reviews. Garner, 529 U.S. at 254; Morales, 514 U.S. at 512-13.

Like the statutes at issue in Garner and Morales, N.C. Gen. Stat. § 15A-1371(b) (as amended) does not change the punishment for plaintiff's underlying offense, alter the standards for establishing either the initial date for parole eligibility or suitability for parole, or otherwise change the basic structure of North Carolina's parole system.[1] Moreover, as in Garner and Morales, the

---

[1]N.C. Gen. Stat. § 15A-1371(b) does not change the "basic structure" of North Carolina's parole system because the law expressly grants the Parole Commission discretion to conduct expedited reviews for sex offenders, and thus sex offenders are not categorically prohibited from receiving parole reviews when circumstances suggest they are eligible for parole.

statute permits the Parole Commission to grant expedited hearings based on exigent circumstances or if the interests of justice demand it. Id. Thus, the court concludes N.C. Gen. Stat § 15A-1371(b)(5) does not on its face create a sufficient risk of retroactively increased punishment. See Hunt v. Rand, No. 5:10-CT-3139-FL, 2011 WL 3664340, at *3 (E.D.N.C. Aug. 18, 2011) (holding similar North Carolina statute changing frequency of parole reviews for certain offenders did not violate Ex Post Facto Clause), aff'd, 461 F. App'x 327 (4th Cir. 2012).

Additionally, to establish an ex post facto violation, plaintiff must demonstrate that "as applied to his own sentence the law created a significant risk of increasing his punishment." Garner, 529 U.S. at 255. Despite ample opportunity for discovery, plaintiff has not made the requisite showing. In fact, the current record before the court establishes the change in parole review frequency does not create a significant risk of increasing plaintiff's term of imprisonment. Prior to receiving his current life sentence, plaintiff was released on parole multiple times, and each time he committed a new criminal violation within two years of release. (Stevens Aff. (DE 65-1) ¶¶ 3-9). And plaintiff has provided no evidence suggesting he currently meets criteria for parole release, or that he would be eligible for release prior to his next review. See Garner, 529 U.S. at 255 ("Given respondent's criminal history, including his escape from prison and the commission of a second murder, it is difficult to see how the Board increased the risk of his serving a longer time when it decided that its parole review should be exercised after an 8-year, not a 3-year, interval. Yet if such a risk develops, respondent may, upon a showing of either 'a change in [his] circumstance[s]' or the Board's receipt of 'new information,' seek an earlier review before the 8–year interval runs its course."). As in Garner, if plaintiff's circumstances change before his next parole hearing, such that he becomes eligible for parole, he may apply for expedited consideration. Id.; 2015 N.C. Sess. Laws

228, § 1 (DE 65-14), amending N.C. Gen. Stat. § 15A-1371(b).  Thus, on this record, plaintiff cannot establish that the increased interval between his parole reviews will create a significant risk of increased punishment.

Plaintiff also appears to argue that the change in parole review frequency violated his due process rights under the Fourteenth Amendment.  The Due Process Clause analysis involves two steps: "[the court first determines] whether there exists a liberty or property interest of which a person has been deprived, and if so [the court analyzes] whether the procedures followed by the State were constitutionally sufficient."  Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (citation omitted).  An inmate has no independent federal constitutional right to be paroled before the expiration of his valid criminal sentence, and states have no constitutional obligation to establish a parole system.  See id. at 220. However, when a state does create a liberty interest, such as by requiring that certain prisoners receive parole consideration,[2] the Due Process Clause "requires fair procedures for its vindication – and federal courts will review the application of those constitutionally required procedures."  Id.; Burnette, 687 F.3d at 180-82.  The procedural requirements are minimal in the context of parole, and due process simply requires, at most, that an inmate be provided a statement of the reasons why parole was denied.  Id.; Vann v. Angelone, 73 F.3d 519, 522 (4th Cir.1996).

Here, plaintiff's due process claim is based on the fact that his parole eligibility reviews have changed from annually to biannually.  The Due Process Clause is not implicated by this circumstance.  Rather, due process merely requires that parole review be conducted at the intervals dictated by North Carolina law, and that plaintiff be provided a statement of the reasons parole was

---

[2]In such circumstances, the state-created liberty interest is in parole consideration, not release on parole. Burnette v. Fahey, 687 F.3d 171, 181 (4th Cir. 2012).

denied.  Vann, 73 F.3d at 522; see also Ewell v. Murray, 11 F.3d 482, 488 (4th Cir. 1993) ("The procedures may be changed at the will of prison officials so long as they afford that process which is due under the Due Process Clause of the Fourteenth Amendment.").  As set forth above, plaintiff has received regular parole reviews since he became eligible for parole, and he does not argue that the statement of reasons for denying parole were constitutionally deficient.  Accordingly, defendants are entitled to summary judgment on plaintiff's due process claims.

      2.      N.C. Gen. Stat. § 143B-721.1

Plaintiff also argues that he is entitled to additional parole review pursuant to N.C. Gen. Stat. § 143B-721.1.  Under that statute, the Parole Commission must consider for parole prisoners sentenced under North Carolina's Fair Sentencing Act who have served more time in custody than they would have served if they had been sentenced to the maximum sentence for the same crime under North Carolina's Structured Sentencing Act.  N.C. Gen. Stat. § 143B-721.1(a).  Assuming without deciding this statute provides a due process right to parole review, plaintiff's claim fails because the statute currently does not entitle plaintiff to additional parole consideration.

To determine whether plaintiff is entitled to parole review under N.C. Gen. Stat. § 143B-721.1, the court first must determine the amount of time plaintiff has served in custody under his current Fair Sentencing Act sentence.  Plaintiff was convicted of first-degree rape and first-degree sexual offense on March 4, 1991, and he was given credit for 100 days spent in custody prior to his sentence.  (J. & Commitment Order (DE 65-8)).  Accordingly, plaintiff has been in custody approximately 27 years and 9 months.

The statute provides the following procedure to calculate the maximum sentence plaintiff would have received under structured sentencing:

(1) The offense upon which the person was convicted shall be classified as the same felony class as the offense would have been classified if committed after the effective date of Article 81B of Chapter 15A of the General Statutes [the Structured Sentencing Act].

(2) The minimum sentence shall be the maximum number of months in the presumptive range of minimum durations in Prior Record Level VI of G.S. 15A-1340.17(c) for the felony class determined under subdivision (1) of this subsection. The maximum sentence shall be calculated using G.S. 15A-1340.17(d), (e), or (e1).

N.C. Gen. Stat. § 143B-721.1(b). Thus, the court first determines the felony classification for first-degree rape and first-degree sexual offense under structured sentencing. First-degree rape and first-degree sexual offense are class B1 felonies under structured sentencing.[3] N.C. Gen. Stat. § 14-27.21(b); N.C. Gen. Stat. § 14-27.29(b).

The next step under § 143B-721.1(b) is to determine the maximum number of months in the presumptive range of minimum durations using a prior record level VI for the relevant felony class. For a class B1 felony, prior record level VI, the maximum number of months in the presumptive range of minimum durations is 483 months. N.C. Gen. Stat. § 15A-1340.17(c).

Finally, the court calculates the maximum potential sentence under structured sentencing using either N.C. Gen. Stat. §§ 15A-1340.17(d), (e), or (e1). In this case, subsection (e1) applies, because plaintiff was convicted of a B1 felony with a minimum presumptive term that is more than 340 months. N.C. Gen. Stat. § 15A-1340.17(e1). Subsection (e1) provides that "when the minimum sentence is 340 months or more, the corresponding maximum term of imprisonment shall be equal to the sum of the minimum term of imprisonment and twenty percent (20%) of the minimum term of imprisonment, rounded to the next highest month, plus 12 additional months." Id.

---

[3]The court also assumes plaintiff would have received concurrent sentences under structured sentencing. Plaintiff appears to have received concurrent sentences under the Fair Sentencing Act. (See J. & Commitment Order (DE 65-8)).

Here, 20% of 483 months (the minimum term calculated above) is 96.6, which is rounded up to 97 months, and then added to 483 months, producing 580 months.  The statute also requires addition of 12 months, thus producing a maximum sentence of 592 months under structured sentencing for a B1 felony at prior record level VI.  Plaintiff has served approximately 333 months (27 years and 9 months), which is 259 months under the maximum term he could have received under structured sentencing. Thus, plaintiff is not eligible for additional parole review under N.C. Gen. Stat. § 143B-721.1 because he has not served more time in custody than the maximum term he could have received under structured sentencing.  Defendants are therefore entitled to summary judgment on plaintiff's claim to the extent he seeks additional parole reviews under N.C. Gen. Stat. § 143B-721.1.

3.     Equal Protection Clause

Plaintiff also argues that his equal protection rights were violated because other inmates convicted of first-degree rape have received parole.  The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  To that end, the Equal Protection Clause provides that "all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Generally, in order to establish an equal protection claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.  If a plaintiff makes this showing, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny."  Veney v. Wyche, 293 F.3d 726, 730–31 (4th Cir. 2002) (internal quotation omitted); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Plaintiff has not made the requisite showing to establish an equal protection claim. Plaintiff has produced no evidence showing that the inmates who were granted parole were "similarly situated" to him, beyond his bare assertions that they were also convicted of first-degree rape, or that the decision to deny plaintiff parole was the result of intentional or purposeful discrimination. See Reffitt v. Nixon, 917 F. Supp. 409, 414 (E.D. Va. 1996) ("[I]n light of the myriad of factors involved in a parole decision, it is difficult to believe that any two prisoners could ever be considered similarly situated for the purposes of judicial review of an equal protection claim."), aff'd, No. 96-6808, 1997 WL 428600 (4th Cir. July 31, 1997). Thus, defendants' motion for summary judgment is granted as to the equal protection claim.

4.      Eighth Amendment Claims

As noted, plaintiff also alleges defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by "falsely imprisoning" him. Plaintiff relies on the same facts to support his Eighth and Fourteenth Amendment claims – that his parole eligibility determinations were changed from annually to biannually and that he is entitled to additional parole reviews under N.C. Gen. Stat. § 143B-721.1. These claims do not amount to an independent Eighth Amendment violation because plaintiff was sentenced to a life term of imprisonment and he does not have a constitutional right to be paroled before expiration of his valid criminal sentence. Swarthout, 562 U.S. at 220. Thus, denial of parole – or increasing the interval between parole determinations – cannot amount to cruel and unusual punishment because plaintiff has no constitutional right to parole release. See id.[4] Defendants are thus entitled to summary judgment on plaintiff's Eighth

_____

[4]Additionally, the court notes plaintiff was not sentenced to a life term with possibility of parole as a juvenile and thereafter has been denied a meaningful opportunity to obtain parole in violation of the Eighth Amendment. Graham v. Florida, 560 U.S. 48, 75 (2010); Hayden v. Keller, 134 F. Supp. 3d 1000, 1009 (E.D.N.C. 2015).

Amendment claims as well.

## CONCLUSION

Based on the foregoing, defendants' motion for summary judgment (DE 62) is GRANTED, and plaintiff's claims are DISMISSED with prejudice. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 26th day of September, 2018.

LOUISE W. FLANAGAN
United States District Judge